**Astrud OLIVEIRA, also known as Astrud Gilberto, Plaintiff–Appellant,**

**v.**

**FRITO–LAY, INC., Pepsico, Inc., BBDO Worldwide, Inc., and Omnicom Group, Inc., Defendants–Appellees.**

**Docket No. 00–7492.**

United States Court of Appeals, Second Circuit.

Argued Nov. 3, 2000.

Decided May 8, 2001.

Annemarie Franklin, New York, NY, for Plaintiff–Appellant.

David S. Versfelt, New York, NY, (Kirkpatrick & Lockhart), for Defendants–Appellees.

Before KEARSE, LEVAL, and SOTOMAYOR, Circuit Judges.

LEVAL, Circuit Judge:

Astrud Oliveira, known professionally as Astrud Gilberto, appeals from the dismissal of her suit by the United States District Court for the Southern District of New York (Loretta A. Preska, *District Judge*). The defendants are Frito–Lay, Inc., a well-known seller of potato chips, and other entities engaged in the promotion of Frito–Lay products (collectively the "Defendants" or "Frito–Lay"). Among numerous claims, the complaint alleged that the defendants infringed her trademark rights under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by using a famous 1964 recording of Gilberto singing "The Girl from Ipanema" ("Ipanema") in a television

commercial for Frito–Lay's baked potato chips. The complaint also alleged claims under New York State law, including violation of plaintiff's right of publicity under New York Civil Rights Law § 51, unjust enrichment and unfair competition. With respect to the federal claim under the Lanham Act, the district court dismissed based on its conclusion that no reasonable jury could find that defendants' use of plaintiff's performance in their commercial implied an endorsement by plaintiff of Frito–Lay's potato chips. With respect to the state law claims, the court ruled that, upon the publication of her recorded performance in 1964, plaintiff lost her common law rights in the recording.

We affirm the dismissal of the Lanham Act claim for somewhat different reasons. As for the dismissal of the state law claims, the court improperly assumed facts adverse to plaintiff. We therefore vacate the grant of judgment in favor of the defendants on those claims; we remand for the dismissal of the state law claims without prejudice to their being refiled in state court.

## BACKGROUND

*1.  Facts*

In 1964, Gilberto recorded "Ipanema" accompanied by Stan Getz, on saxophone, and her then-husband, Joao Gilberto, on the guitar. The 1964 recording became world famous (the "1964 Recording").

In 1996, defendant Frito–Lay began to market "Baked Lays" Potato Crisps, a low-fat baked potato chip. It introduced the product with a thirty-second television advertisement created by its advertising agency, defendant BBDO Worldwide, Inc. The ad shows several famous models reclining by a swimming pool. The 1964 Recording of Ipanema plays in the background. As the camera pans from one model to the next, each looks crestfallen that the bag of Baked Lays in her hands is empty. The camera moves on to Miss Piggy, also reclining by the pool, who has been eating the chips and passing the empty bags to the models, while singing along with plaintiff's recording. A voice-over identifies Baked Lays, and adds, "With one and a half grams of fat per one ounce serving, you may be tempted to eat like a . . . ." "Don't even think about it!" interrupts Miss Piggy.

"Ipanema" was written by Vinicius de Moraes and Antonio Carlos Jobim. Jobim registered the composition with the U.S. Copyright Office in 1963, and renewed the registration in 1991. Norman Gimbel composed the English lyrics for the song and registered a U.S. copyright for them in 1963, renewing in 1991. The 1964 recording at issue in this case was made for the recording company Verve, which is now a subsidiary of PolyGram Records, Inc. PolyGram Records claims to own the master of the recording. It distributes the recording, along with Gilberto's rendition of several other popular songs, on various albums and CDs under the Verve Records label.

In order to use the recording in the Baked Lays commercial, BBDO purchased the synchronization rights from Duchess Music Corporation on behalf of Jobim and Gimbel Music Group on behalf of Gimbel. BBDO also purchased a license to use the master recording from PolyGram Records. It paid more than $200,000 for the licenses. Apparently believing that Gilberto had retained no rights in the recording, BBDO did not seek her authorization to use it in the ad.

Gilberto was not involved in the production of the 1964 Recording other than as lead singer. She did not compose the music, write the lyrics, or produce the recording. According to her complaint,

when recording the song, she did not sign any contract or release with the recording company or the producers; and she was not employed by them.

Gilberto received a Grammy award for the recording, which immediately became a smash hit and launched her now thirty-five year career in singing. She claims that as the result of the huge success of the 1964 Recording, and her frequent subsequent performances of "Ipanema," she has become known as The Girl from Ipanema and is identified by the public with the 1964 Recording. She claims as a result to have earned trademark rights in the 1964 Recording, which she contends the public recognizes as a mark designating her as a singer. She contends, therefore, that Frito–Lay could not lawfully use the 1964 Recording in an advertisement for its chips without her permission.

### 2. Proceedings Below

Gilberto's complaint at first asserted "false implied endorsement" under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as five pendent claims under New York law, including unfair competition (through violation of a common law copyright), and interference with her right of publicity in violation of N.Y. Civ. Rights Law § 51. The defendants moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6); the district court granted the motion as to the five state-law claims but denied the motion as to the Lanham Act claim. *Oliveira v. Frito–Lay, Inc.,* No. 96 Civ. 9289(LAP), 1997 WL 324042 (S.D.N.Y. June 13, 1997).

The court ruled against dismissing the Lanham Act claim because it was "not entirely implausible" that plaintiff could prove that the audience might interpret the inclusion of the 1964 Recording in the ad as implying Gilberto's endorsement of Baked Lays. The claim for unfair competi-tion was dismissed because the court found Gilberto failed to allege a property right in the 1964 Recording. In 1964, the federal copyright law gave no protection to recorded performances; as for any common law rights Gilberto had possessed in the recording, the court concluded that she had relinquished them upon publication of the work. Noting, however, that by pleading exceptional circumstances, she might be able to overcome the presumption of relinquishment upon publication, the court granted her leave to replead the unfair competition claim. As to the claim for interference with her right to publicity under N.Y. Civ. Rights Law § 51, the court dismissed on the ground that the statute applied only to the use of a "name, portrait or picture," and Gilberto did not allege such a use.

Gilberto then moved for reconsideration of the portions of the June 13, 1997, order dismissing her unfair competition claim and her claim under N.Y. Civil Rights Law § 51. The district court denied the motion as to the unfair competition claim without leave to replead. As to the right of publicity claim, however, the court noted that in 1995, the year before the defendants aired the commercial, N.Y. Civil Rights Law § 51 was amended to include not only unauthorized use of a name, portrait and picture, but also the unauthorized use of a person's voice. The court therefore granted Gilberto leave to replead the claim under § 51 to allege wrongful use of her voice. (Order of March 30, 1998)

Gilberto then filed a Second Amended Complaint. The complaint again raised a claim under Section 43(a) of the Lanham Act. This time, however, the claim was framed in significantly broader terms—not merely for "false implied endorsement," but more generally, for "capitaliz[ing] on Plaintiff's valuable reputation and good-will" in a way "likely to cause confusion or

to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the sponsorship or approval of Defendants' goods by Plaintiff." In addition, the complaint raised a claim of trademark dilution under Section 43(c), 15 U.S.C. § 1125(c), and five state-law claims, two of which were, once again, for unfair competition and violation of N.Y. Civ. Rights Law § 51. The complaint also raised a new state-law claim for unjust enrichment. The defendants moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss all the claims, except the one under Section 43(a) of the Lanham Act. (Motion of June 5, 1998)

The district court granted the motion. *Oliveira v. Frito–Lay, Inc.*, No. 96 Civ. 9289(LAP), 1999 WL 20849 (S.D.N.Y. Jan. 15, 1999). It dismissed the dilution claim because in the court's view, "there is no Federal trademark protection for a musical work." *Id.* As to the right of publicity claim under § 51, now pleaded to allege unauthorized use of Gilberto's voice, the court ruled that no valid claim was pleaded because an exception to liability arises under § 51 when the plaintiff has "sold or disposed of the voice embodied in the production." *Id.* According to the court's reasoning, by recording "Ipanema" without a contract, plaintiff placed her recorded voice in the public domain, and had thus "disposed of" her rights in her recorded voice. The court dismissed the claims for unfair competition and unjust enrichment on the theory that both claims required Gilberto to plead a common law property right in the recording, and she had failed to do so.

Defendants then moved for summary judgment on the remaining claim under Section 43(a) of the Lanham Act. In an opinion delivered from the bench on February 10, 2000, the district court granted the defendants' motion and dismissed the

case giving two reasons—first, that Gilberto lacked standing to raise a Lanham Act claim because "the record discloses no competitive or commercial interest affected by the conduct complained of," and second, that "no reasonable jury could find for plaintiff on her claim of implied endorsement." On March 23, 2000, judgment was entered in favor of the defendants.

## DISCUSSION

On appeal, Gilberto challenges the dismissal of (1) her claim for trademark infringement under the Lanham Act, and (2) three New York law claims alleging violation of Civil Rights Law § 51, unfair competition, and unjust enrichment.

1. *Lanham Act.* The district court granted summary judgment on Gilberto's Lanham Act claim on two grounds: (1) a fact finder could not reasonably find that the ad implied Gilberto's endorsement of Frito–Lay's product, and (2) lack of standing.

To the extent Gilberto's claim depended on the theory of implied endorsement, we agree with the district court that a factfinder could not reasonably find an implied endorsement and affirm its judgment. Had Gilberto not amended the Lanham Act claim in her First Amended Complaint which was captioned "False Implied Endorsement in Violation of 15 U.S.C. § 1125(a)," and which seemed to rely solely on the implied endorsement theory, this reasoning might dispose of the Lanham Act claim. The Second Amended Complaint, however, broadened the Lanham Act claim. It expressly asserts that "Plaintiff's performance of her signature song ... constitutes Plaintiff's unregistered trademark" and that the defendants' use of the recording of plaintiff's performance in its advertisement "capitalize[s] on Plaintiff's valuable reputation

and good will and [is] likely to cause confusion or to deceive as to the affiliation, connection or association of Defendants with Plaintiff." These passages assert that Gilberto possesses a trademark in her 1964 performance, and the defendants made unauthorized use of her mark in their advertisement, causing likely consumer confusion.

Gilberto sought to support this theory in defending the motion for summary judgment by affidavits asserting that the song is her signature piece and the centerpiece of all her concert appearances, that the public associates her performance of Ipanema with her, and that she bills herself as "The Girl from Ipanema" and operates an informational website under that name.

The district court's ruling did not expressly address this branch of plaintiff's Lanham Act claim. The court did say in explaining its dismissal of the trademark *dilution* claim, under 15 U.S.C. § 1125(c)(1), that "there is no federal trademark protection for a musical work," which may explain why the court found it unnecessary to address further plaintiff's trademark *infringement* claim. The court furnished no authority supporting its assertion that a musical work cannot serve as a trademark, but reasoned that the protection of a musical work "falls under the rubric of copyright, not trademark law."

▮ If the court meant to dismiss the trademark infringement claim on the ground that a musical composition cannot serve as a trademark, we see no reason why this should be so. The fact that musical compositions are protected by the copyright laws is not incompatible with their also qualifying for protection as trademarks. Graphic designs, of course, may be protected by copyright; that does not make them ineligible for protection as trademarks. The Act defines a "trademark" as including "any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. We can see no reason why a musical composition should be ineligible to serve as a symbol or device to identify a person's goods or services. In *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995), the Supreme Court considered whether a color could serve as a mark. In deciding that. it could, the Court reviewed the broadly inclusive language of the statutory definition and observed that the courts and the Patent and Trademark Office have authorized trademark protection for "a particular shape (of a Coca–Cola bottle), a particular sound (of NBC's three chimes), and even a particular scent (of plumeria blossoms on sewing thread)." *Id.* at 162, 115 S.Ct. 1300. NBC's three chimes, which the Supreme Court referred to as "a particular sound" is of course not a single sound; it is three sounds, in a specified order, with a specified tempo, on a specified instrument—in short, a brief musical composition. For many decades it has been commonplace for merchandising companies to adopt songs, tunes and ditties as marks for their goods or services, played in commercials on the radio or television.[1] We can see no reason to doubt

---

1. A few famous examples over the years have been the William Tell Overture for the Lone Ranger (*see* Registration No. 2155923), "Sweet Georgia Brown" for the Harlem Globetrotters (*see* Registration No. 1700895), "My Beer is Rheingold the Dry Beer," "See the U.S.A. in Your Chevrolet," "You Deserve a Break Today—at McDonalds," "Double your pleasure, double your fun with . . . Doublemint Gum," "Um, Um, good; Um,

that such musical compositions serve as marks, protected as such by the Lanham Act. We do, however, affirm the district court's dismissal of the trademark infringement claim for a slightly different reason.

Dealing with a related question, a panel of our court considered whether a musical composition could serve as a trademark *for itself,* and concluded it could not. *See EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 64 (2d Cir.2000). The court reasoned that granting to a song the status of trademark *for itself* would stretch the definition of trademark too far and would cause disruptions as to reasonable commercial understandings. *Id. Cf. Sinatra v. Goodyear Tire & Rubber Co.,* 435 F.2d 711, 712 (9th Cir.1970) (rejecting claim by singer Nancy Sinatra that song she sang "has been so popularized by [Sinatra] that her name is identified with it; that she is best known by her connection with the song [and] that said song ... has acquired a secondary meaning" such that another person could not sing it in a commercial).

█ For similar reasons, we conclude that, at least upon the showing made by Gilberto, the law does not accord her trademark rights in the recording of her signature performance. Plaintiff has not cited a single precedent throughout the history of trademark supporting the notion that a performing artist acquires a trademark or service mark signifying herself in a recording of her own famous performance. The "signature performance" that a widespread audience associates with the performing artist is not unique to Gilberto.

Many famous artists have recorded such signature performances that their audiences identify with the performer. Yet in no instance was such a performer held to own a protected mark in that recording.

It is true, there are instances in which courts have protected the "persona" of an artist against false implication of endorsement generally resulting from the use of look-alikes or sound-alikes. *See, e.g., Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1107 (9th Cir.1992) (affirming judgment for plaintiff, Tom Waits, on false implied endorsement claim for use in a snack-food commercial of a singer who imitated plaintiff's gravelly singing style praising defendant's product); *White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395, 1400–01 (9th Cir.1992) (holding there was genuine issue of material fact precluding summary judgment as to false implied endorsement claim brought by Vanna White, the hostess of the "Wheel of Fortune" game show, for use in an advertisement for VCRs of a look-alike caricature robot endorsing defendant's product); *Allen v. National Video, Inc.,* 610 F.Supp. 612, 627–28 (S.D.N.Y. 1985) (upholding actor Woody Allen's claim of false implied endorsement for use in an advertisement for video-rental stores of a look-alike renting videos from defendant). But these authorities do not help Gilberto. The use of her recorded song has not taken her persona, and the district court properly concluded that she could sustain no claim of implied endorsement.

We cannot say it would be unthinkable for the trademark law to accord to a performing artist a trademark or service mark in her signature performance. If Congress were to consider whether to ex-

Um, good; that's what Campbell's soups are, um, um, good," "Try Wildroot Cream Oil, Charley. Start using it today," "When you see the three-ring-sign, Ask the man for Ballantine," "Chock Full o' Nuts is that heavenly coffee," "National Shoes ring the bell," Alka–Seltzer's "Plop, plop, fizz fizz, oh what a relief it is;" "Spud cigarettes are cooler than cool," as well as the theme songs of the "I Love Lucy" show "The Honeymooners", "Sesame Street," Mr. Rogers' Neighborhood, and "The Sopranos."

tend trademark protection to artists for their signature performances, reasons might be found both for and against such an expansion. But for a court now to "recognize" the previously unknown existence of such a right would be profoundly disruptive to commerce. Numerous artists who could assert claims similar to Gilberto's would bring suit against entities that had paid bona fide license fees to all known holders of rights. Indeed, artists who had licensed users under their copyrights and had received fees for the copyright license could bring suits claiming additional compensation for infringement of trademark rights. Immense unforeseen liabilities might accrue, upsetting reasonable commercial expectations. We can see no justification for now altering the commercial world's understanding of the scope of trademark rights in this fashion.

We perceive no need in the interests of fairness to so expand the scope of trademark, because the law affords performing artists a number of other protections—even for performances made before the federal copyright statute was expanded in 1972 to cover sound recordings—including significant protections that may be secured by contract. We therefore affirm the district court's dismissal of the Lanham Act claim.

### 2. State Law Claims

(a) Gilberto also challenges the dismissal of three state law claims: violation of her right to publicity under N.Y. Civil Rights Law § 51, unfair competition, and unjust enrichment. In our view, these rulings were in error.

### (i) The Right of Publicity Claim Under N.Y. Civil Rights Law § 51.

Among the claims of the Second Amended Complaint, Gilberto alleged that the defendants violated her right of publicity as protected by N.Y. Civil Rights Law § 51, by "us[ing] [her] voice in an advertisement for a snack food product without her written consent." *Appellant's Br.* at 8. The defendants moved under Fed.R.Civ.P. 12(b)(6) to dismiss the § 51 claim for failure to state a claim upon which relief may be granted. The district court granted the motion by its opinion of January 15, 1999.

Section 51 of the N.Y. Civil Rights Law provides a claim for an injunction and damages in favor of "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without ... written consent...." N.Y. Civ. Rights Law § 51. It is not disputed that Gilberto's complaint properly alleged that defendants had used her voice within the State of New York for advertising without her consent. That sufficed to state a claim under § 51.

The defendant's motion to dismiss was based on the affirmative defense provided by an exception specified in § 51:

> But nothing contained in this article shall be so construed as to prevent any person, firm or corporation ... from using the name, portrait, picture or voice of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith.

N.Y. Civ. Rights Law § 51.

The district court read Gilberto's complaint to admit that she had placed the recording of Ipanema in the public domain and had thus "disposed of" her artistic production. We believe this was a misreading of the complaint. Gilberto did not admit in her complaint that she had placed her recording in the public domain or otherwise disposed of it. A ruling on the

defendant's motion under Rule 12(b)(6) cannot be granted unless it is clear from the complaint that judgment cannot be in plaintiff's favor. That is not the case here. The complaint did not say that plaintiff released the song without a contract. The assertion in the complaint differed in two respects from such a statement. It asserted that plaintiff "recorded the song ... without a contract or any formal agreement with the producers or the record company." Second Am. Compl. ¶ 6. First, the admission that plaintiff recorded the song without a contract with the producers or the record company does not admit that at the time of recording, she had no beneficial contract rights *with anyone* securing some interest in her performance. Nor further does it admit that, having made the recording, she released it without contractual protections. A recording artist might record a song without a contract for many different reasons—to try out an arrangement or style, to try out a band or accompanist, to make a demo tape. The making of a recording does not constitute consent to the public release of the recording.

In sum, on a motion under Rule 12(b)(6), the court could not properly read the complaint as admitting that plaintiff was not the beneficiary of any contract rights pertaining to the public release of her recorded performance or that she placed her recording in the public domain. Accordingly, the dismissal under rule 12(b)(6)

cannot stand. We therefore vacate the judgment.

(ii) *Unfair competition and unjust enrichment*

The district court also granted the defendants' motion under Rule 12(b)(6) to dismiss the claims of unfair competition and unjust enrichment for failure to state a claim upon which relief may be granted. The reason was essentially the same as given for the dismissal of the claim under § 51—that "the facts alleged do not permit the legal conclusion that plaintiff maintains a cognizable right" in the 1964 Recording. *Oliveira,* 1999 WL 20849, at *6. For the same reasons explained above relating to the dismissal of the claim under § 51, the order of dismissal of the unfair competition and unjust enrichment claims is vacated.

(b) Because the only federal law claim justifying federal jurisdiction was dismissed, and because the state law claims present issues of state law that have not been clearly decided by the New York courts,[2] we believe that supplemental jurisdiction is not appropriately exercised and that the district court should dismiss the state law claims without prejudice so as to allow plaintiff to replead them in the New York state courts.

## CONCLUSION

The dismissal of Gilberto's Lanham Act claim is affirmed. The grant of judgment

---

**2.** Issues of state law raised by the parties' contentions that are not directly addressed by New York decisional authority include whether § 51 provides the exclusive remedy for unauthorized use of a person's voice, displacing claims for unjust enrichment; whether common law copyright in a voice recording that was placed on sale prior to the Copyright Act's provision of protection to voice recordings on February 15, 1972, went into the public domain if the recording was first publicly sold with the recording artist's consent;

whether § 51 applies to voice recordings made, or sold or disposed of, prior to the amendment of § 51 to cover voice recordings; and whether the exception to § 51 authorizing use of the "name, portrait, picture, or voice of any ... artist in connection with his literary, musical, or artistic productions which he has sold or disposed of with such name, portrait, picture, or voice used in connection therewith" applies only to uses that commercially identify or describe or promote the work in question.

to the defendants on the New York law claims under Civil Rights Law § 51, unfair competition, and unjust enrichment is vacated. These state law claims are remanded with instruction to dismiss them without prejudice so that they may be re-pleaded in the courts of New York.