**G.M.L., INC., Plaintiff,**

v.

**Aubrey MAYHEW, Defendant.**

**No. 3:96–1163.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 25, 2002.

Timothy L. Warnock, Bowen, Riley, Warnock & Jacobson, PLC, Nashville, TN, for G.M.L., Inc.

Aubrey Mayhew, Nashville, TN, Pro se.

## *MEMORANDUM*

TRAUGER, District Judge.

This case is currently scheduled for a bench trial beginning Tuesday, January 29, 2002. At the pre-trial conference, the court raised the question of whether the plaintiff has a viable claim under section 43(a) of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1125(a), based upon the plaintiff's proposed findings of

fact and conclusions of law (Docket No. 92). Without such a claim, the court lacks subject-matter jurisdiction over this case. Upon request, the court allowed the plaintiff to submit a supplemental brief addressing this issue (Docket No. 101), to which the *pro se* defendant responded (Docket No. 103). After consideration of the plaintiff's arguments, the court finds that, as a matter of law, the plaintiff cannot state a claim for violations of the Lanham Act in this case. Therefore, the plaintiff's claim under the Lanham Act, which is the only claim remaining in this case, must be dismissed.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

For the purposes of this decision, the court will accept as true the plaintiff's proposed findings of fact. (Docket No. 92, paras. 1–16) In March 1984, the plaintiff acquired all right, title, and interest in a number of master recordings of songs by the performing artist Johnny Paycheck, which are collectively referred to as the "Little Darlin' masters." The plaintiff simultaneously acquired the physical master recordings of these songs. Sometime in 1996, the defendant created a tape of twenty-four (24) recordings by compiling songs from phonorecords, tapes, and compact discs purchased at retail outlets. At least twenty-one (21) of these recordings were copies of songs contained on the Little Darlin' masters owned by the plaintiff.

In July 1996, the defendant signed a Master License and Distribution Agreement claiming that he was the owner of the recordings contained on the tape he compiled. (Docket No. 101, attach. Ex. 3) In the agreement, the defendant purported to convey to the Country Music Foundation ("CMF") the rights to manufacture, sell, and distribute a phonorecord entitled "Johnny Paycheck, The Real Mr. Heartache, The Little Darlin' Years," in exchange for an advance against royalties in the amount of $7,500. This phonorecord of 24 songs contained the 21 songs to which the plaintiff owns the rights and title. Thereafter, the CMF distributed and sold, or caused to be distributed and sold, this phonorecord.

On December 19, 1996, the plaintiff filed this lawsuit against the defendant, alleging (1) willful violation of section 1125(a) of the Lanham Act, 15 U.S.C. § 1125(a), by causing a false and misleading designation of origin to be affixed to the phonorecord; (2) conversion of the plaintiff's exclusive rights in and to the vocal performances embodied on the phonorecord; (3) violation of Tenn. Code Ann. § 39–14–139 by knowingly manufacturing, transferring, recording, or storing on recording devices, with the intent to sell for commercial advantage or financial gain, a live performance while knowing the live performance was recorded or stored without the plaintiff's consent; (4) violation of Tenn.Code Ann. § 39–14–139 by knowingly advertising, selling, transporting, and possessing with the intent to sell, for commercial advantage, a recorded device containing live performances while knowing that the live performances were recorded or stored without the plaintiff's consent; (5) violation of the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–1–101, *et seq.*, in that the defendant used unfair and deceptive acts or practices; and (6) unfair competition with the plaintiff by attempting to "palm off" the performances on the subject phonorecord as belonging to him.

The defendant moved to dismiss the claims on the grounds that the plaintiff did not have standing under Tennessee law. (Docket No. 50) As a foreign corporation, the plaintiff was required by Tennessee law to file for and receive a Certificate of Existence from the Tennessee Secretary of State in order to do business within Tennessee. Tenn.Code Ann. § 48–25–101. Without a certificate of authority, a foreign

corporation "may not maintain a proceeding in any court in this state . . . ." Tenn. Code Ann. § 48–25–102(a). The court found that, due to its noncompliance with state law, the plaintiff did not have standing to bring its state law claims. The plaintiff conceded that it had not complied with this law but requested a stay of the proceedings in order to cure its noncompliance. (Docket No. 52) The court stayed the proceedings pursuant to Tenn.Code Ann. § 48–25–102(c) for thirty (30) days to allow the plaintiff to submit proof of compliance with Tennessee corporation law. When the plaintiff failed to submit such proof, its state law claims were dismissed. (Docket No. 56) Thus, only the plaintiff's federal law claim under the Lanham Act remained when the case transferred to this judge.

## II. ANALYSIS

██ "[T]rademark law . . . pursues two related goals—the prevention of deception and consumer confusion, and, more fundamentally, the protection of property interests in trademarks." *Ameritech, Inc. v. American Info. Tech. Corp.*, 811 F.2d 960, 964 (6th Cir.1987). To that end, section 1125(a)(1) of the Lanham Act provides that

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the

affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, of commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The plaintiff brought its claim under the Lanham Act alleging a false designation of origin by the defendant. Specifically, the plaintiff alleges that

the defendant's claim that he owns a copyright in the subject master recordings is designed to cause the consumer and other third parties to conclude that defendant in fact owns a copyright in those recordings and has the right to exploit those recordings. To the contrary, defendant has no such rights but is infringing the rights of the plaintiff.

(Docket No. 1, Complaint, para. 7) As a separate cause of action, the plaintiff alleged that "[t]he defendant has also engaged in unfair competition with GML by attempting to palm off the performances on the subject phonorecord as belonging to him." *Id.*, para. 11. Although it is not clear that the plaintiff brought this as a separate claim under the Lanham Act,[1] the court will treat it as such for the purposes of this analysis.

---

1. The plaintiff has offered no proposed findings of fact and conclusions of law relating to this claim. At the pretrial conference, the plaintiff conceded that the claim was brought under common law and was, therefore, dismissed with the remainder of the state law claims. (Docket No. 104, Transcript of Proceedings, January 18, 2002 at 9) The pro-

posed Joint Pretrial Order includes a claim of unfair competition, although it does not specify that it is being brought as part of the false designation of origin claim under the Lanham Act. Thus it appears that the plaintiff is asserting the "palming off" claim as part of its Lanham Act claim. Because a claim for false designation of origin may include "palming

It is axiomatic that in order to seek the protections of trademark law, one must have a protectable trademark. In *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), the Supreme Court stated:

> The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in ... commerce against unfair competition.' § 45, 15 U.S.C. § 1127. Section 43(a) 'prohibits a broader range of practices than does § 32,' which applies to registered marks, but it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).

*Id.,* at 767–68, 112 S.Ct. at 2757 (internal citations and footnote omitted).[2] Thus, a trademark need not be registered in order to be protected, as long as it is capable of registration under section 2. However, "[a] plaintiff claiming unfair competition under § 43(a) must show that it owns a valid trademark eligible for protection." *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc.,* 228 F.3d 56, 62 (2nd Cir.2000).

The Sixth Circuit has found that

[a] trademark is a *designation,* 'any word, name, symbol, or device, or any combination thereof,' which serves 'to identify and distinguish [the] goods [of the mark's owner] ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.' 15 U.S.C. § 1127. Although some marks are classified as inherently distinctive and therefore capable of protection, it is not the case that all inherently distinctive symbols or words on a product function as trademarks. Rather, in order to be protected as a valid trademark, a designation must create 'a separate and distinct commercial impression, which ... performs the trademark function of identifying the source of the merchandise to the customers.' *In re Chem. Dynamics, Inc.,* 839 F.2d 1569, 1571 (Fed.Cir.1988).

*Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir.1998) (internal citations omitted) (alteration in original).[3]

As the Supreme Court has noted, "[m]arks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos,* 505 U.S. at 768, 112 S.Ct. at 2757 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2nd Cir.1976)). The

---

off," *see Johnson v. Jones,* 149 F.3d 494, 503 (6th Cir.1998), the court will accept this as part of the plaintiff's remaining claim in this case.

2. The plaintiff has attempted repeatedly to recharacterize *Two Pesos* to state that a claim under section 43(a) of the Lanham Act requires that the "goods," rather than the "marks," be distinctive. (Docket No. 78 at 6; Docket No. 92 at 7; Docket No. 101 at 2) This clearly is an incorrect statement of federal trademark law.

3. As one commentator explains,

[t]he requirements for qualification of a word or symbol as a trademark can be broken down into three elements: (1) the tangible symbol: a word, name, symbol or device or any combination of these; (2) type of use: actual adoption and use of the symbol as a mark by a manufacturer or seller of goods or services; (3) the function: to identify and distinguish the seller's goods from goods made or sold by others.

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 3:1 (4th ed. 1996 & Supp.2001).

latter three categories are considered inherently distinctive and are entitled to protection. By comparison, generic marks are not registrable. Descriptive marks are not inherently distinctive but may be registered if they have acquired a "secondary meaning" in commerce. *See id.*, at 763–64, 112 S.Ct. at 2757–58. Secondary meaning occurs where "it can be determined that the attitude of the consuming public toward the mark denotes a single thing coming from a single source." *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir.1989) (internal quotation marks and citation omitted). Thus, a descriptive mark has acquired secondary meaning when it has " 'becom[e] distinctive of the applicant's goods.' " *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir.1996) (quoting *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984) (internal quotation marks and citation omitted)).[4]

■ In this case, the plaintiff has never alleged the existence of a trademark in the sound recordings at issue. When questioned by the court at the pretrial conference, plaintiff's counsel conceded that it had no registrable trademark in the sound recordings:

Court: And let me just make sure that I understand. Your position is that what is protectable? What is protectable? What do you have a trademark in?

Counsel: Association with the Johnny Paycheck master recordings. It's not a trademark. It's—but what's confusing is the origin of the Johnny Paycheck master recordings.

Court: What do you have a trademark or service mark in?

Counsel: Nothing, Your Honor . . . .

Court: So you are telling me that you do not have a protectable trademark or service mark in anything in this case?

Counsel: Yes.

(Docket No. 104, Transcript of Proceedings, January 18, 2002 at 7–8)

Instead, the plaintiff has argued that the sound recordings themselves are protectable as trademarks. (Docket No. 92 at 7–8; Docket No. 78 at 6–7) The plaintiff claims that "the Johnny Paycheck Little Darlin' Masters are a discrete body of work known to the consuming public and, as such, are inherently distinctive" as arbitrary and fanciful. (Docket No. 92 at 7–8; Docket No. 78 at 7) Additionally, the plaintiff claims that these sound recordings are protectable as descriptive marks that have obtained secondary meaning "because the Johnny Paycheck Little Darlin' Masters describe a discrete body of work performed by the performing artist, Johnny Paycheck . . . ." (Docket No. 78 at 7–8; Docket No. 92 at 8)

As discussed, the Sixth Circuit has defined a trademark as a "designation," the purpose of which is to " 'identify and distinguish [the] goods [of the mark's owner] . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.' " *Rock and Roll Hall of Fame and Museum*, 134 F.3d at 753 (quoting 15 U.S.C. § 1127). The sound recordings in this case do not indicate the source of the goods; they are the goods.

This is not to say that sound recordings cannot be trademarks. McCarthy notes

---

4. As the Sixth Circuit has explained,

To acquire secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, 'That is the article I want because I know its source,' and not the negative inquiry as to 'Who makes that article?' In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it.

*S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1239 (6th Cir.1991) (citation omitted).

that "[w]hile a relative rarity in the world of marks, a sound is indeed capable of being a trademark or service mark." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 7:104 (4th ed.1996 and Supp.2001). Thus,

> [t]he Trademark Board, noting that several sound marks have been registered, said that sound marks can be fitted into the familiar categories of inherently distinctive marks. That is, 'unique, different or distinctive' sounds would need no proof of secondary meaning, but sounds that resemble or imitate 'commonplace' sounds would need evidence of secondary meaning to prove that they have become distinctive and identified with a single source. Applying this test to an application for the sound of a ship's bell tolled at intervals as on shipboard as a service mark for radio broadcasting services, the Board held that this sound was not inherently distinctive and needed proof of acquired distinctiveness.
>
> It is also possible that theme music, such as that used in a motion picture or for a radio or television program, may serve as a mark for the movie or program.

*Id.*

▮ Although sound recordings may be trademarks, they must be used to iden-

tify ownership or origin in order to be registrable. *See Oliveira v. Frito–Lay, Inc.*, 251 F.3d 56, 61 (2nd Cir.2001) (finding that musical recordings may be trademarks where they "serve as a symbol or device to identify a person's goods or services"). In this case, the musical recordings do not signify the plaintiff's ownership rights. They are the product that is owned. The plaintiff makes no claim that the sound recordings signify anything other than themselves.

The plaintiff does argue that these song recordings have acquired secondary meaning by describing a discrete body of work by Johnny Paycheck.[5] However, there is no dispute that the sound recordings were made by Johnny Paycheck, and the defendant has never attempted to imply otherwise. The question is whether the sound recordings serve to identify their origin as the property of the plaintiff. This they cannot and do not do. As a result, the sound recordings are not protectable trademarks in and of themselves.

In its supplemental brief to the court, the plaintiff argues that it is entitled to bring this claim under the Sixth Circuit's opinion in *Johnson v. Jones*, 149 F.3d 494 (6th Cir.1998). In *Johnson*, the court addressed a claim of reverse passing off, or selling someone else's product as your

---

**5.** Although the plaintiff refers to these recordings collectively as the "Little Darlin' Masters," there are actually twenty-one separate songs at issue in this case. The plaintiff alleges that the defendant obtained copies of these songs from various phonorecords, cassettes, and compact discs available at retail stores and then compiled them into one phonorecord. The "Little Darlin'" songs apparently are songs that were recorded by Johnny Paycheck for the Little Darlin' record label owned by Paycheck and the defendant in the 1960s. (Docket No. 102, Affidavit of Andrew Egan, attach. Ex. A) There is no evidence and no allegation that these twenty-one songs were ever produced on a single phonorecord prior to the defendant's compilation or that

"Little Darlin' Masters" is anything other than a merely descriptive term coined by the plaintiff to refer to these twenty-one songs.

To the extent that either the term "Little Darlin' Masters" or the individual song titles could be alleged to be trademarks, they cannot serve as trademarks unless they have acquired secondary meaning. *See Trapani v. CBS Records, Inc.*, 857 F.2d 1475, 1988 WL 92438, at *3 (6th Cir. Sept.2, 1988) (table). Again, the plaintiff makes no allegation that the titles identify anything other than the separate songs. Certainly, neither the collective name nor the individual song titles indicates the plaintiff's ownership of the songs. Therefore, these also cannot serve as protectable trademarks.

own, which is the claim here. The plaintiff alleged that the defendant claimed ownership of architectural plans that he had created and copyrighted. The court found that the factors considered in most trademark infringement cases were inapplicable because they compared the similarity between the marks used by the parties, which was not at issue. The court stated:

> Here, the defendant has not produced a product to which he has applied a mark so like the plaintiff's that the public is likely to believe that the product was produced by the plaintiff. Rather, the defendant has taken the plaintiff's product and has represented it to be his own work. It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product. We need not inquire about the distinctiveness or secondary meaning of the trademarks involved, because the trademarks are not the issue. In fact, most of the eight ... factors are irrelevant to this inquiry because they deal with the relationship between the plaintiff's and defendant's trademarks, not their products ....
>
> [I]t is obvious beyond dispute that by taking Johnson's name and seal off the plans and replacing them with his own, Tosch intended for people to assume that the plans were his, and not Johnson's. Indeed, this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were Tosch's work. Few are

the cases demonstrating a more obvious and imminent likelihood of confusion.

*Id.* at 503.

The plaintiff alleges that the facts in this case are substantially similar to *Johnson* and provide a cause of action under the Lanham Act. What the plaintiff overlooks, however, is that there were trademarks in *Johnson.* Although the court found that the trademarks themselves were "not the issue," the court relied upon the fact that Tosch removed Johnson's name and seal from the plans and replaced it with his own.

The plaintiff has never alleged that it had its name or seal or mark on the sound recordings in this case. The plaintiff alleges that the defendant copied the sound recordings without authorization, improperly asserted ownership of the rights to those recordings, and licensed their reproduction and distribution in violation of the plaintiff's rights. This may form the basis for a claim of copyright infringement.[6] It is not, however, a claim under the Lanham Act because the plaintiff has never alleged the existence of any protectable trademark on the sound recordings.

### III.  CONCLUSION

Accepting all of the plaintiff's proposed findings of fact as true, the court cannot find that the plaintiff has a claim under the Lanham Act because there are no protectable trademarks in the sound recordings at issue. As a result, this court has no juris-

---

**6.** The plaintiff claims that it has no copyright protection because the sound recordings were "fixed" prior to 1972. (Docket No. 101 at 6) It is true that such sound recordings are not protected under federal statutory copyright law. However, they would be able to seek protection under the common law of copyright. *See A & M Records, Inc. v. M.V.C. Dist. Corp.,* 574 F.2d 312, 313 (6th Cir.1978).

Such claims would arise under state law. In this case, the plaintiff's state law claims were dismissed for lack of standing based on the plaintiff's failure to register with the Tennessee Secretary of State as a foreign corporation. That result does not alter the fact that the plaintiff does not have a claim under the Lanham Act.

diction over this case, and the plaintiff's claim must be dismissed.

An appropriate Order shall Enter.

### ORDER

For the reasons discussed in the accompanying Memorandum, the plaintiff's claim under the Lanham Act is **DISMISSED**. As that is the only remaining claim in this case, the bench trial currently scheduled for Tuesday, January 29, 2002 is canceled, and this case is **DISMISSED**.

It is so Ordered.